IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

BLAKE MENDROP
and LYNN MENDROP                                            PLAINTIFFS

VERSUS                                        CIVIL ACTION NO. 2:05CV15-P-B

SHELTER MUTUAL INSURANCE COMPANY
AND DARREN MUSSELWHITE d/b/a SHELTER
INSURANCE AGENCY                                            DEFENDANTS

**MEMORANDUM OPINION**

This cause is before the Court on the plaintiffs' Motion to Remand and for Costs [6-1]. The Court, having reviewed the motion, the response, the briefs of the parties, the authorities cited and being otherwise fully advised in the premises, finds as follows, to-wit:

FACTUAL BACKGROUND

Blake and Lynn Mendrop purchased a lot in Woodland Trace Estates subdivision in April 1999. In conjunction with that purchase, the Mendrops applied for insurance with Shelter Mutual Insurance Company through its agent, Darren Musselwhite. The Mendrops sought to purchase a policy which would afford coverage for the risks attendant with the construction of their home, inasmuch as they intended to act as their own contractor. Musselwhite procured insurance coverage for the Mendrops, assuring them that the coverage was adequate for their purposes when in fact the coverage he procured on their behalf was nothing more than a typical homeowner's policy with a policy period running from April 13, 1999 through October 29, 1999.

The Mendrops completed construction of the home in Woodland Trace in September 1999. Thereafter, Shelter reissued the policy for a one year period running from October 29, 1999 to October 29, 2000. However, Shelter cancelled the policy for nonpayment of premium on January 8, 2000.

The Mendrops sold their Woodland Trace home to William and Sharon Montgomery on April 12, 2001. Subsequently, on July 16, 2001, the Montgomerys filed suit against the Mendrops in the Circuit Court of Desoto County, Mississippi; their complaint alleged theories of recovery pertaining to the Mendrops' failure to disclose the existence of numerous construction defects in connection with the sale of the Woodland Trace property [1]

The Mendrops notified Shelter of the Montgomery litigation on October 23, 2001 via letter from their attorney wherein they demanded a right to defense and indemnity under the Shelter policy described above. Shelter reviewed the coverage issue; after determining that the subject policy afforded neither defense nor indemnification coverage for the allegations of the Montgomery complaint, Shelter notified the Mendrops of its decision to deny coverage via letter to their attorney dated December 11, 2001. The Mendrops' attorney asked Shelter to revisit its decision on several occasions; Shelter adamantly maintained its position.

On December 10, 2004, the Mendrops filed suit against Shelter and Musselwhite in the Circuit Court of Desoto County, Mississippi based on various theories of state law: negligence/gross negligence, breach of contract/oral promise, negligent misrepresentation, promissory estoppel, detrimental reliance, breach of contract/duty to defend, breach of contract/duty to indemnify, bad faith/punitive damages and negligent infliction of emotional distress. Shelter filed a timely Notice

---

[1] The Mendrops ultimately settled the Montgomery suit for $5,000.

of Removal on January 11, 2005 alleging diversity jurisdiction as a basis for jurisdiction. The plaintiffs, in turn, filed a Motion to Remand founded on asserted defects in the removal petition as well as lack of subject matter jurisdiction. The motion has been fully briefed and is ripe for decision.

STANDARD OF REVIEW

Title 28, section 1441 governs the removal of actions from state court. It provides in pertinent part: "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

As noted supra, Shelter predicated the removal on the provisions of 28 U.S.C. § 1332. Commonly referred to as the diversity statute, § 1332 establishes this Court's subject matter jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between–(1) citizens of different states . . . ." 28 U.S.C. § 1332. The sticking point in this action is the requirement that there be complete diversity between all plaintiffs and all properly joined defendants.[2]

Quick reference to the face of the amended complaint reveals a lack of complete diversity. However, the insurance defendant avers that the non-diverse defendant was fraudulently joined in an effort to defeat federal jurisdiction.[3] It contends that, under the facts pled and as supplemented

---

[2] The plaintiffs do not dispute defendants' assertions pertaining to the amount in controversy requirement.

[3] The citizenship of fraudulently joined defendants is disregarded for purposes of determining whether a court has diversity jurisdiction. Burden v. General Dynamics Corp., 60 F.3d 213, 218 (5th Cir. 1995).

3

by the record, there is no basis under Mississippi law for a recovery against the agent defendant. Rogers v. Modern Woodmen of America, 1997 WL 206757, *2 (N.D. Miss. 1997).

The existence of a cognizable claim is to be determined by reference to the allegations contained in the plaintiff's state court pleadings. Ironworks Unlimited v. Purvis, 798 F. Supp. 1261, 1263 (S.D. Miss. 1992). The Court is also free to pierce the pleadings by considering summary judgment-type evidence such as affidavits and deposition testimony. Carriere v. Sears, Roebuck and Co., 893 F.2d 98, 100 (5th Cir. 1990).

The removing party bears the burden of proving the jurisdictional prerequisites. Where the basis for removal is diversity jurisdiction based on an allegation of fraudulent joinder, a defendant bears a heavy burden of establishing the right to a federal forum. The removing defendant must present clear and convincing evidence of fraudulent joinder in order to avoid remand. Rogers v. Modern Woodmen of America, 1997 WL 206757, *2 (N.D. Miss. 1997). Furthermore, in determining whether the joinder of a party was fraudulent, the district court "must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of fact in favor of the plaintiff." B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. 1981). Similarly, any uncertainties in the substantive law must also be resolved in favor of the plaintiff. Head v. United Ins. Co. of America, 966 F. Supp. 455, 457 (N.D. Miss. 1997).

LEGAL ANALYSIS

I.   Defects in Removal Petition

As a first line of attack, plaintiffs urge the Court to remand this case based solely on pleading deficiencies in the notice of removal. They target the following paragraph in particular:

> Although the citizenship of Defendant Musselwhite is not alleged in the Complaint, even if his citizenship is established to be in Mississippi, his joinder does not preclude diversity jurisdiction because Defendant Musselwhite has been improperly joined in this action. There is no reasonable basis for the District Court to predict that the Plaintiffs might be able to recover against Defendant Musselwhite.

Defendant's Notice of Removal at p. 2 (citations omitted).

The Mendrops argue that Shelter's conclusory assertion of fraudulent joinder is insufficient to establish that "all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied." Smallwood v. Illinois Central R.R., 385 F.3d 568, 572 (5th Cir. 2004). Plaintiffs base their contention on the premise that "[m]ere allegations of fraudulent joinder standing alone are not sufficient to divest the state court of jurisdiction over this matter. A claim of fraudulent joinder must be asserted with particularity and supported by clear and convincing evidence." Horton v. Scripto-Tokai Corp., 878 F. Supp. 902, 910 (S.D. Miss. 1995). Plaintiffs' argument finds support in the language of older Supreme Court precedent. Chesapeake & Ohio Railway Co. v. Cockrell is one such case. 232 U.S. 146, 58 L.Ed.2d 544, 34 S. Ct. 278 (1914). In Cockrell, the high court observed:

> The right of removal from a state to a Federal court, as is well understood, exists only in certain enumerated classes of cases. To the exercise of the right, therefore, it is essential that the case be shown to be within one of those classes; and this must be done by a verified petition setting forth, agreeably to the ordinary rules of pleading, the particular facts, not already appearing, out of which the right arises. It is not enough to allege in terms that the case is removable or belongs to one of the enumerated classes, or otherwise to rest the right upon mere legal conclusions. As in other pleadings, there must be a statement of the facts relied upon, and not otherwise appearing, in order that the court may draw the proper conclusion from all the facts, and that, in the event of a removal, the opposing party may take issue, by a motion to remand, with what is alleged in the petition.

5

Id. at 151-52.[4][5]

Moreover, there is ample authority for the proposition that the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure apply equally to allegations of fraudulent joinder asserted in a removal petition. See Saylor v. General Motors Corp., 416 F. Supp. 1173 (D.C. Ky. 1976); Harris Diamond Co. V. Army Times Publ. Co., 280 F. Supp. 273 (D.C.N.Y. 1968); Shane v. Kansas City Southern Ry. Co., 121 F. Supp. 426 (D.C. Ark. 1954). The Tenth Circuit expressed the point most pellucidly in Updike v. West: "But fraudulent joinder, *like any other allegation of fraud*, must be pleaded with sufficient certainty to justify the conclusion that the joinder was a fraudulent device to prevent removal." 172 F.2d 663, 665 (10th Cir.), cert. denied, 337 U.S. 908 (1949) (emphasis added).

However, a survey of the case law reveals a dearth of plenary remand decisions predicated on pleading deficiencies like those in the present case. The simple explanation lies in the ready remedy of amendment under 28 U.S.C. § 1653, a statutory provision which permits curative

---

[4] Although the 1988 amendments to § 1446(a) eliminated the requirement of a verified petition stating the facts justifying removal in favor of "a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), the consensus is that the amendment is a minor one which effects no substantive change. David D. Siegel, Commentary on 1988 Revision of Section 1446.

[5] See also Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97, 66 L.Ed. 144, 42 S. Ct. 35 (1921) ("[T]his right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy. If in such a case a resident defendant is joined, the joinder, although fair upon its face, may be shown by a petition for removal to be only a sham or fraudulent device to prevent a removal; but the showing must consist of a statement of facts rightly leading to that conclusion apart from the pleader's deductions.").

amendments to otherwise defective allegations of jurisdiction.[6] An amendment is proper so long as it merely corrects or clarifies grounds for removal already stated in the original notice, as distinguished from that which states an altogether different basis for removal. 14C Charles Alan Wright et al., Federal Practice and Procedure § 3733 (3d ed. 1998). As a further matter, a formal motion to amend is not necessarily required, as recognized by the Supreme Court in Willingham v. Morgan, 395 U.S. 402, 23 L.Ed.2d 396, 89 S. Ct. 1813 (1969). In Willingham, the Court deemed it proper to consider affidavits filed subsequent to the notice of removal in determining whether there was an adequate basis for removal.[7] In doing so, the Court implicitly approved the practice of looking to the record as a whole, rather than limiting review to the verbiage employed in the removal petition alone, in determining the existence of sufficient grounds for an exercise of jurisdiction under the removal statute. The Court finds this to be the most sagacious course in the instant case as well. Accordingly, because the defendant's submissions in opposition to the remand motion thoroughly explicate their fraudulent joinder argument, the Court declines to remand on the basis of the asserted defects in the notice of removal.

---

[6] The statute applies to removal petitions as well as complaints. D.J. McDuffie, Inc. v. Old Reliable Fire Ins. Co., 608 F.2d 145, 146-47 (5th Cir. 1979), cert. denied, 449 U.S. 830 (1980); Fireman's Ins. Co. of Newark v. Robbins Coal Co., 288 F.2d 349, 350 (5th Cir. 1961).

[7] "This material should have appeared in the petition for removal. However, for purposes of this review it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits." Id. at 408 n.3. See also Buell v. Sears, Roebuck & Co., 321 F.2d 468, 471 (10th Cir. 1963) ("If there were some suggestion in the record supporting diversity jurisdiction, we might deem the petition for removal amended to comport with the proof.").

II.     Fraudulent Joinder Analysis

The Mendrops are citizens of Mississippi. Shelter is incorporated and has its principal place of business in Missouri. As defendant Musselwhite is a citizen of Mississippi, complete diversity is lacking for purposes of subject matter jurisdiction. Hence, the propriety of removal turns on whether Musselwhite was fraudulently joined for the purpose of defeating federal jurisdiction.[8]

A.      Statute of Limitations

In addition to attacking the merits of the state-law claims enumerated in the complaint[9], Shelter also contends that any claims plaintiffs might have against Musselwhite are time-barred. The applicable statute of limitations for all of plaintiffs' state law claims is § 15-1-49, Miss. Code Ann. This catchall statute limits the time for bringing a cause of action to three years from the date of accrual. In cases based on alleged misrepresentations in the sale of an insurance policy, the cause of action accrues and the statute of limitations begins to run at the time of purchase.[10] Stephens v. Equitable Life Assurance Society of the United States, 850 So.2d 78, 82 (Miss. 2003). Thus, Mississippi law presumes that actions based on an insurance policy purchased more than three years prior to the filing of the complaint are barred by the statute of limitations. The basis for this

---

[8] The citizenship of a fraudulently joined defendant must be disregarded when considering whether the diversity requirement is satisfied. Badon v. R.J.R. Nabisco Inc., 224 F.3d 382, 389 (5th Cir.2000).

[9] Because the Court's resolution of the statute of limitations issue is dispositive, it is unnecessary for the Court to consider the additional arguments raised by defendant.

[10] The Mendrops' complaint pled causes of action against Musselwhite sounding in negligence, breach of contract, negligent misrepresentation, promissory estoppel, detrimental reliance and negligent infliction of emotional distress. Regardless of nomenclature, plaintiffs' claims all depend on a common nucleus of operative fact, e.g., Musselwhite's oral representations to the Mendrops in conjunction with the sale of an insurance policy.

8

presumption is Mississippi's general rule regarding the execution of contracts:

> In Mississippi, a person is charged with knowing the contents of any document that he executes. A person is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract.
>
> . . . [I]nsureds are charged with knowledge of the contents of written agreements notwithstanding whether they actually read such an agreement.

Andrus v. Ellis, 887 So.2d 175, 180-81 (Miss. 2004) (citations omitted).

Plaintiffs filed suit on December 10, 2004. In order to avoid the statutory bar, their claims must have accrued no later than December 10, 2001. The declarations page referenced in the complaint and attached thereto as an exhibit shows that the policy became effective on April 13, 1999. Shelter provided the Mendrops with a copy of the declarations page and policy on April 28, 1999. Under the case law discussed above, the effect of the latter date is clear: the Mendrops are imputed with the knowledge of the contents of the policy as of April 28, 1999. Any claim against Musselwhite based on his alleged oral representations accrued on that date. Absent a circumstance which would toll the running of the limitations period, plaintiffs' claims against Musselwhite are barred by the statute of limitations.[11]

---

[11] Plaintiffs attempt to divert the Court's attention from their failure to examine the terms of their policy by claiming that, even had they done so, they would not have been able to determine that all or some of the Montgomery claims would not have been covered. They then go one step further and argue that their cause of action against Musselwhite has yet to accrue: "[U]nless and until there is a binding judicial determination that defendant Shelter had no duty to defend and/or no duty to indemnify under the applicable policy for all or some of the claims alleged in the Montgomery suit, the Mendrops do not **know** that a cause of action exists against Defendant Musselwhite." Plaintiffs' Reply Brief at p. 12-13 (emphasis in original). Such vague assertions of ambiguity are insufficient to toll the limitations period. As pointed out by Shelter in its supplemental brief, the Mendrops' claims against Musselwhite turn solely on the events of April 1999, an inquiry analytically divorced from the Montgomery litigation.

Plaintiffs' reply brief targets one such exception to the limitations defense. They urge the Court to apply the doctrine of fraudulent concealment to defeat Shelter's argument. Title 15, chapter 1, section 67 of the Mississippi Code provides:

> If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.

Miss. Code Ann. § 15-1-67.

Reference to Mississippi case law reveals that plaintiffs are not entitled to the benefits of tolling under § 15-1-67 unless they prove that the defendants "'engaged in affirmative acts of concealment'" and that "even though they acted with due diligence in attempting to discover their cause of action, they were unable to do so. Robinson v. Cobb, 763 So.2d 883, 887-888 (2000)(other citations omitted). The record is devoid of any evidence on either point. Plaintiffs cannot show any action by Musselwhite subsequent to the issuance of the policy which tended to conceal the existence of a cause of action against him. Furthermore, plaintiffs had unrestricted access to policy materials; their failure to avail themselves of that information is, without a doubt, fatal to any claim that they exercised reasonable diligence. See also Howard v. Citifinancial, Inc., 195 F. Supp.2d 811, 822-23 (S.D. Miss. 2002); Ross v. Citifinancial, Inc., Civil Action No. 5:01CV185BN, 2002 WL 461567, at *4-7 (S.D. Miss. Mar. 18, 2002). Under the facts and controlling law, the Court concludes that the plaintiffs have no possibility of recovery against Musselwhite. The only remaining properly joined defendant is completely diverse to plaintiffs.

B. <u>Boone</u>'s Effect on <u>Smallwood</u>

In <u>Smallwood v. Illinois Central Railroad</u>, 385 F.3d 568 (5th Cir. 2004), the Fifth Circuit held that a finding of fraudulent joinder cannot rest on a defense common to all defendants:

> A showing that the plaintiff's case is barred as to all defendants is not sufficient. When the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, and that showing is equally dispositive of all defendants rather than to the in-state defendants alone, the requisite showing has not been made.

<u>Id.</u> at 575. <u>Smallwood</u> is inapplicable to the facts of this case because the plaintiffs have alleged certain contractual claims which lie only against the insurer defendant. <u>Boone v. Citigroup, Inc.</u>, 416 F.3d 382 (5th Cir. 2005). Accordingly, this Court's determination that the statute of limitations bars plaintiff's claims against Musselwhite does not "equally and necessarily compel dismissal of all claims against all diverse defendants." <u>Id.</u> at 391.

## CONCLUSION

Based on the foregoing facts and analysis, the Court concludes that the plaintiffs' Motion for Remand and for Costs [6-1] is not well-taken and should be denied. Furthermore, the individual defendant identified herein as fraudulently joined is entitled to dismissal as a party defendant. An Order will issue accordingly.

This, the 4th day of August, 2006.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE