**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**BLAKE MENDROP
and LYNN MENDROP**                                                          **PLAINTIFFS**

**VERSUS**                                                       **CIVIL ACTION NO. 2:05CV15-P-B**

**SHELTER MUTUAL INSURANCE
COMPANY, et al**                                                              **DEFENDANTS**

## MEMORANDUM OPINION

This cause is before the Court on defendant Shelter Mutual Insurance Company's Motion for Summary Judgment [48]. The Court, having reviewed the motion, the response, the briefs of the parties, the authorities cited and being otherwise fully advised in the premises, finds as follows, to-wit:

PROCEDURAL CONTEXT

Blake and Lynn Mendrop filed suit against Shelter Mutual Insurance Company (hereafter "Shelter") in the Circuit Court of Desoto County, Mississippi on December 10, 2004. Their Complaint alleges a right of recovery predicated on bad faith breach of an insurance contract and negligent infliction of emotional distress. Shelter removed the action to this Court pursuant to 28 U.S.C. §§ 1332 and 1441 on January 11, 2005.[1] Subsequent to the removal, Shelter filed its Answer denying all liability. The case is now before the Court on a motion for summary judgment filed by Shelter. The matter has been fully briefed and the Court is ready to rule.

---

[1] Plaintiff filed a Motion to Remand; the relief requested therein was denied pursuant to this Court's Order dated August 4, 2006.

FACTUAL BACKGROUND

This action is predicated on Shelter's denial of insurance coverage on a homeowner's policy issued to Blake and Lynn Mendrop. The policy covered a home located at 3421 Woodland Trace, Nesbit, Mississippi. The Shelter policy, a Platinum Shield Homeowner's policy, provided dwelling and personal property coverage, as well as personal liability coverage. The policy remained in effect from the time of its initial issuance on April 13, 1999 until Shelter canceled it on January 8, 2000 for non-payment of premium.

The Mendrops acted as their own contractors in building the covered dwelling. After completing construction, the Mendrops lived in the home for a brief time and then sold it to William and Sharon Montgomery on April 12, 2001. Thereafter, on July 16, 2001, the Montgomerys filed suit against the Mendrops in the Circuit Court of Desoto County, Mississippi; their complaint alleged theories of recovery premised on alleged misrepresentations, failure to disclose numerous allegedly defective conditions and negligent construction of the home.[2] The Mendrops notified Shelter of the Montgomery action and requested defense and indemnification under their homeowners' policy on

---

[2] The specific theories of recovery advanced in the Montgomery's complaint were:

1. Breach of the contract, for not delivering the property free from defects as promised in the contract of sale;
2. Breach of express warranty, stemming from representations made in the contract of sale and the disclosure statement;
3. Breach of implied warranty that the home was built in a workmanlike manner;
4. Breach of good faith and fair dealing contained in all contracts in Mississippi;
5. Negligent misrepresentation regarding the condition of the home;
6. Negligent construction of the home;
7. Gross negligence by misrepresenting the condition of the home;
8. Violation of Mississippi's real estate disclosure statute at <u>Miss. Code Ann</u>. § 89-1-501 et seq.;
9. Punitive damages

October 23, 2001 via letter from their attorney. Shelter reviewed the coverage issue and ultimately determined that the policy afforded no coverage for the allegations of the Montgomery's complaint. Shelter notified the Mendrops of its decision to deny coverage via letter to their attorney dated December 11, 2001.

The current action by the Mendrops is one for bad faith refusal to afford the Mendrops with defense and indemnification against the Montgomery suit. In addition, the Mendrops seek damages for alleged negligent infliction of emotional distress. The Mendrops' right to recovery on their claims is wholly dependent on the propriety of Shelter's decision to deny coverage, an issue which requires review of the following pertinent policy provisions:

> SECTION II - COMPREHENSIVE PERSONAL LIABILITY PROTECTION
>
> We will pay all sums arising out of any one loss which an insured becomes legally obligated to pay as damages because of bodily injury or property damage and cause by an occurrence covered by this policy.
>
> ADDITIONAL COVERAGES - SECTION II
>
> We will pay, in addition to our limit of liability:
>
> 1. Damage to Property of Others
>
> We will pay for property damage to property owned by others caused by an insured.
>
> . . .
>
> But, we will not pay for property damage:
>
> . . .
>
> © arising out of:
>
> . . .
>
> (2) business pursuits;

. . .

EXCLUSIONS - SECTION II

Under Personal Liability and Medical Payments to Others, we do not cover:

. . .

2. bodily injury or property damages arising out of the rendering or failing to render professional services.

3. bodily injury or property damage arising out of business pursuits of an insured.

. . .

5. bodily injury or property damage expected or intended by an insured.

. . .

Under personal liability, we do not cover:

1. liability assumed under any oral contract or agreement, or under any contract or agreement in connection with any business of an insured.

2. property damage to property owned by an insured.

. . .

Exhibit 1 to defendant's Motion for Summary Judgment. Furthermore, the definitions section of the policy provides:

4. "Business" means:

(a) any full or part time trade, profession or occupation;

. . .

7. "Property Damage" means physical injury to or destruction of tangible property, including loss of its use.

. . .

12. "Occurrence" means an accident including injurious exposure to conditions,

which results, during the policy term, in bodily injury or property damage.

. . .

Exhibit 1 to defendant's Motion for Summary Judgment. Finally, the following general policy condition also affects whether there is coverage:

> GENERAL POLICY CONDITIONS APPLYING TO SECTION I AND SECTION II
>
> . . .
>
> 6. POLICY PERIOD. This policy applies to losses, bodily injury or property damage which occur during the policy period.

Exhibit 1 to defendant's Motion for Summary Judgment. Having set forth the policy provisions which informed Shelter's decision to deny coverage, the Court is ready to proceed with the requisite analysis thereof.

## STANDARD OF REVIEW

Rule 56© of the Federal Rules of Civil Procedure authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corporation v. Catrett, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S. Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. John v. State of La. (Bd. Of T. for State C. & U., 757 F.2d 698, 712 (5th Cir. 1985).

A judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to

return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 91 L.Ed.2d 202, 106 S. Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." Id. "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. Phillips Oil Company, v. OKC Corporation, 812 F.2d 265, 272 95th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. See Celotex, 477 U.S. at 323, 106 S. Ct. at 2552. Topalian v. Ehrman, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. McPherson v. Rankin, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. Union Planters Nat. Leasing v. Woods, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. Topalian, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." John, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment, " even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. Id. at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. Ferguson v. National Broadcasting Co., Inc., 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." In Re Municipal Bond Reporting Antitrust Lit., 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed. R. Civ. P. See also Union Planters Nat. Leasing v. Woods, 687 F.2d at 119.

While generally "[t]he burden to discover a genuine issue of fact is not on [the] court, (Topalian, 954 F.2d at 1137), "Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention–the court must consider both before granting a summary judgment." John, 757 F.2d at 712, quoting Keiser v. Coliseum Properties, Inc., 614 F.2d 406, 410 (5th Cir. 1980).

## LEGAL ANALYSIS

Pursuant to Mississippi law, whether an insurer has a duty to provide a defense to its insured depends upon the language of the policy in question. Sennett v. United States Fidelity & Guaranty Co., 757 So.2d 206, 212 (Miss. 2000). The obligation to defend is also to be determined based on an analysis of the allegations of the complaint in the underlying action. Id. Only where the pleadings state facts which bring the injury within the coverage of the policy is the insurer required to provide a defense.

Reduced to its simplest terms, Shelter's homeowner's policy entitles the Mendrops to defense and indemnity only if the underlying suit by the Montgomery's is one for 1) "property damage" or "bodily injury;" 2) caused by an "occurrence;" 3) for which the insureds are legally liable; and 4) no exclusion applies to preclude coverage. State Farm & Cas. Co. v. Brewer, 914 F. Supp. 140, 142 (S.D. Miss. 1996). In addition, as this is an occurrence-based policy, the alleged loss much have taken place within the policy period. Titan Indemn. Co. v. Williams, 743 So.2d 1020, 1024 (Miss. App. 1999).

Shelter's motion advances numerous bases in support of its coverage decision. First, Shelter embraces the position that the misrepresentation claims fall outside the policy period. Second, Shelter asserts that these same claims are not for property damage as defined by the liability policy. Insofar as concerns the Montgomery's negligent construction claim, Shelter avers that the policy's definition of an occurrence necessarily proscribes coverage. Finally, Shelter maintains that the specific exclusionary clauses in the policy likewise defeat coverage. The Court will address only those arguments necessary to a decision in this matter.

I.      Misrepresentation-Based Claims

Reference to the Montgomery's Complaint reveals no allegation of a bodily injury. Accordingly, the underlying cause of action must be for "property damage" caused by an "occurrence" for coverage to exist under the Shelter policy.

A.      No evidence of Property Damage

The policy defines "property damage" as "physical injury to or destruction of tangible property, including loss of its use." Exhibit 1 to defendant's Motion for Summary Judgment. In Audobon Ins. Co. v. Stefancik, the court interpreted a policy with the same definition of "property damage" and held that "[p]urely pecuniary or economic losses are not 'property damage'" and denied coverage for the insureds' claims of financial loss. 98 F.Supp.2d 751, 756 (S.D. Miss. 1999). The Stefancik court found as a matter of law that claims for merely pecuniary or economic losses impose no duty to defend on insurers whose policies provide coverage only for tangible property damage. Id.

Although the Mississippi Supreme Court has yet to consider this issue in conjunction with misrepresentation claims stemming from the sale of a home, two decisions out of the Southern District of Mississippi provide ample basis for concluding that such claims do not meet the definition of property damage and, therefore, insurers are not subject to obligations of defense and indemnity. In Shelter Mut. Ins. Co. v. Brown, the home buyer sued the seller, alleging that she intentionally or negligently failed to disclose defects in the foundation of the sale property. 345 F.Supp.2d 645 (S.D. Miss. 2004). According to the complaint, the seller certified that she was unaware of any necessary repairs and that the home had no problems which might concern a purchaser. Brown asked her insurer to provide her with a defense to the suit; her insurer responded by seeking declaratory relief

of noncoverage on grounds that the underlying lawsuit did not seek relief for property damage. The district court agreed based on its analysis of an earlier decision on the same point:

> In Brewer, the underlying lawsuit involved the buyer of a home with termite damage who alleged that the sellers negligently had misrepresented that the home was free of termite damage. The court reasoned that the damage to the home was caused by termites, not by any misrepresentations, and that the only damage flowing from the misrepresentations were economic. The court looked to the liability policy in question, noting that while the policy covered property damage, property damage was not caused by any negligent misrepresentation. The court stated, in accordance with the great weight of authority from other jurisdictions, that "the only cognizable damages from such torts are economic and contractual in nature and as such do not fall within the coverage afforded by" liability insurance policies.
>
> In the instant case, the damages claimed by the plaintiff in the underlying lawsuit were caused by a failed foundation and, too, are purely economic in nature. Similarly to the circumstances in Brewer, Roberts allegedly attributes his economic detriment to Brown's misrepresentations. Thus, this court finds that his alleged damages are pecuniary in nature and are not property damage within the meaning of the Shelter Mutual policy. Inasmuch as there is no property damage alleged in the underlying complaint, Shelter Mutual has no duty to defend the underlying lawsuit.

Id. (quoting from State Farm Fire and Cas. Co. v. Brewer, 914 F. Supp. 140, 142 (S.D. Miss. 1996).

As in Brown and Brewer, Shelter owes its policyholders no duty of defense regarding the Montgomery's claims for economic loss flowing from any alleged misrepresentations by the Mendrops in the sale of their home. Economic and contractual damages simply do not fall within the scope of coverage for property damage afforded by homeowner's policies. Brewer, 914 F. Supp. at 142.

    B.    No evidence of an Occurrence

The Shelter policy defines an "occurrence" as "an accident including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage." Exhibit 1 to defendant's Motion for Summary Judgment. In Allstate Ins. Co. v. Moulton, 464 So.2d 507, 509

(Miss. 1985), the Mississippi Supreme Court defined "occurrence" in insurance policies as "an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force, but it does not mean the natural and ordinary consequences of a negligent act." In a more recent case, the Mississippi Supreme Court embraced the holding in Moulton when it observed that in determining whether there has been an occurrence, "the only relevant consideration is whether, according to the declaration, the chain of events leading to the injuries . . . were set in motion and followed a course consciously devised and controlled by [the insured] without the unexpected intervention of any third person or extrinsic force." United States Fid. & Guar. Co. v. Omnibank, 812 So.2d 196, 200 (Miss. 2002).

The Brown case, cited earlier, again affords appropriate guidance. In that case, the court outlined each of the elements of a negligent representation claim; the court then noted:

> The very first element of negligent representation under Mississippi law, misrepresentation of fact, not an opinion, requires the plaintiff . . . to show that [defendant] knew that what she was saying about termite damage to the home was not factual. [Defendant's] failure to reveal facts known to her is not the type of undesigned, sudden and unexpected events which would give rise to an occurrence or accident as those terms are contemplated under Mississippi law.

Brown, 345 F.Supp.2d at 650. Based on the cogent reasoning of the Brown decision, this Court, too, determines that Shelter had no duty to defend the Mendrops against the Montgomery's claims predicated on misrepresentation inasmuch as the complaint seeks no recovery for property damage caused by an occurrence as those terms are defined under the policy.

II. Negligent Construction Claim

The Montgomerys also sought to recover the cost of correcting the Mendrops' alleged negligent and faulty construction. Shelter urges the Court to find that the Mendrops' defective

11

workmanship does not constitute an occurrence under the policy. A survey of the case law reveals that a majority of courts to address the issue have determined that defective workmanship which results in damages only to the work product is not an occurrence.[3] More specifically, this Court has already considered precisely this issue in the context of a commercial general liability policy. ACS Construction Company, Inc. v. CGU, 4:00CV306-P-B (April 29, 2002). In ACS, a construction company contracted to build munitions bunkers for the military and subcontracted out installation of a waterproofing membrane in the roofs. When the membranes leaked, the subcontractor refused to repair, and the construction company had to repair the damage. Thereafter, the construction company sought indemnification for the $190,000.00 repair damages from its insurer. This Court found the insurer's denial of coverage proper. A brief excerpt from the opinion will suffice to explain the basis therefor:

---

[3] See Lenning v. Commercial Union Ins. Co., 260 F.3d 574 (6th Cir. 2001); Webster Co. Solid Waste Auth. v. Brackenrich & Assoc., 617 S.E.2d 851 (W.V. 2005); Pursell Const., Inc. v. Hawkeye-Security Ins. Co., 596 N.W.2d 67 (Iowa 1999); Hawkeye-Security Ins. Co. v. Vector Constr. Co., 460 N.W.2d 329 (Mich. App. 1990); McAllister v. Peerless Ins. Co., 474 A.2d 1033 (N.H. 1984); Viking Constr. Manag., Inc. v. Liberty Mut. Ins. Co., 831 N.E.2d 1 (Ill. 1st Dist. 2005); State Farm and Cas. Co. v. Tillerson, 777 N.E.2d 986 (Ill. 5th dist. 2002); Fredeman Shipyard, Inc. v. Weldon Miller Contractors, Inc., 497 So.2d 370 (La. App. 3d Cir. 1986); Lerner Corp. v. Assurance Co. Of America, 707 A.2d 906 (1998); American States Ins. Co. v. Mathis, 974 S.W.2d 647 (Mo. App. E.D. 1998); Hawkeye-Security Ins. Co. v. Davis, 6 S.W.3d 419 (Mo. App. S.D. 1999); Cincinnati Ins. Co. v. Venetian Terrazzo, Inc., 198 F. Supp.2d 1074 (E.D. Mo. 2001); Wm C. Vick Constr. Co. v. Pennsylvania Nat. Mut. Ins. Co., 52 F. Supp.2d 569, aff'd 2000WL 504197 (4th Cir. 2000); Heile v. Herrman, 736 N.E.2d 566 (Ohio App. 5th Dist. 1999); Indiana Ins. Co. v. Alloyd Insulation Co., 2002 WL 1770491 (Ohio App.2d Dist. 2002); Solcar Equip. Leasing Corp. v. Pennsylvania Manuf. Assoc. Ins. Co., 606 A.2d 522 (Pa. Super 1992); Yegge v. Integrity Mut. Ins. Co., 534 N.W.2d 100 (Iowa 1995); Allstate Ins. Co. v. Morgan, 806 F. Supp. 1460 (N.D. Cal. 1992); J.Z.G. Resources, Inc. v. King, 987 F.2d 98 (2d Cir. 1993); United State Fidelity & Guar. Corp. v. Advance Roofing & Supply Co., Inc., 788 P.2d 1227 (Ct. App. 1989).

> The more important inquiry . . . is the application of the term "accident," as used in common parlance and by the court in <u>Moulton</u> to the leaking roofs. The plaintiff argues that "unless it may be said that [the subcontractor] intended to improperly install the waterproofing membranes in an unworkmanlike manner, installation of the defective membranes was an "occurrence" and, thus, recoupment of costs and expenses to correct the damage to the bunkers are recoverable under the policy. The Court rejects the argument . . . . Quite simply, leaking bunker roofs were a "natural and ordinary consequence" of the negligent workmanship in applying the waterproofing membranes. Thus, the fact that negligence may have precipitated the result does not save the plaintiff's claim.
>
> In short, ACS set in motion and "followed a course consciously devised and controlled by [the insured]" to have waterproofing applies to the roofs. Neither an extrinsic force nor an unexpected intervention of any third person–save the subcontractor who, as already stated, was under the direct control of ACS and itself intended to apply the membrane–intervened to cause the leaking bunker roofs. In the Court's view, such an event does not constitute an "accident" within the plain meaning of the word. <u>Defective workmanship, standing alone, simply lacks the fortuitous character inherent in the term.</u> For, the leaking roofs neither proceeded from an unknown cause, nor were they the "unusual effect" of the known cause–misapplication of waterproofing . . . .
>
> In the final analysis, what ACS seeks from its insurer is a performance bond. This Court, however, declines the invitation to convert the liability policy ACS purchased into a surety agreement, guaranteeing the workmanship of its subcontractors. For, "if the policy is construed as protecting a contractor against mere faulty or defective workmanship, the insurer becomes a guarantor of the insured's performance of the contract, and the policy takes on the attributes of a performance bond.

<u>Id.</u> (quoting from <u>United States Fidelity & Guaranty Co. v. Advance Roofing & Supply Co.</u>, 788 P.2d 1227, 1233 (Ariz. Ct. App. 1989) (emphasis added).

Similarly, Shelter's homeowner's policy is not a performance bond or a type of construction malpractice insurance. It is not intended to pay the purely economic costs associated with repairing or replacing the Mendrops' allegedly defective work. Instead, Shelter's policy covers <u>accidental</u> tort liability. Damages for negligent construction, as noted above, are not the result of an accident or "occurrence." As contractors of the home, the Mendrops controlled the quality of the goods and

13

services supplied in building the home, and "the natural results of the negligent and unworkmanlike construction of a building do not constitute an accident. <u>Monticello Ins. Co. v. Wil-Freds Constr. Co., Inc.</u>, 661 N.E.2d 451 (I..2d Dist. 1996). Accordingly, Shelter did not owe the Mendrops a defense as pertains to the Montgomery's negligent construction claim.

III.    Breach of Contract Claims

The Montgomery's complaint delineates a number of theories of recovery sounding in contract: breach of contract, breach of express warranty, breach of implied warranty, breach of implied covenant of fair and honest dealing, and violation of Mississippi's disclosure statute. The actions expressly allege intentional violations of the Mendrops' contractual obligations. In <u>Brewer</u>, discussed <u>supra</u>, the district court held that "economic and contractual" damages do not fall within the coverage of insurance policies covering claims for bodily injury or property damage caused by an "occurrence" because breach of contract actions do not result from accidental losses. The Shelter policy likewise affords no coverage, thereby absolving the insurer of any duty to provide the Mendrops with a defense against such claims in the underlying action.

CONCLUSION

Based on the foregoing facts and analysis, the Court concludes that defendant's Motion for Summary Judgment [48] is well-taken and should be granted. A judgment will issue accordingly.

This, the 26th day of November, 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE